# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**April 12, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **K.P. and I.C.,**

**No. 15-0874** (Marion County 13-JA-40 & 13-JA-41)

## MEMORANDUM DECISION

Petitioner Mother A.C., by counsel Mikal-Ellen Bennet, appeals the Circuit Court of Marion County's August 6, 2015, order terminating her parental rights to sixteen-year-old K.P. and seven-year-old I.C. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Rebecca Tate, filed a response on behalf of the children also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the DHHR violated her due process rights when it removed I.C. from her custody in July of 2013.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2013, K.P. made accusations of sexual abuse against her stepfather, petitioner's husband. At that time, K.P. resided with petitioner and the stepfather. Three other children, including I.C., resided in the same residence.[2] Upon learning of the accusations, K.P.'s stepmother took K.P. to a nearby gas station to meet her biological father. Having received telephone calls about the events from K.P. and K.P.'s stepmother, petitioner met them at the gas station. Once there, petitioner interrogated K.P. in a parked car. Petitioner reportedly told K.P. that the accusations would ruin the stepfather's life; that petitioner herself had been sexually abused previously in her life; and that sexual abuse "is something you just live with in shame."

---

[1] Petitioner presents no similar argument as to K.P.'s removal from her home at that time.

We also note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

[2] This memorandum decision concerns only petitioner's two biological children—K.P. and I.C.

1

Petitioner later testified that K.P. exited the car, upset that her mother did not believe her. When K.P.'s biological father arrived at the gas station, the adults took K.P. to the Marion County Sheriff's Department. A detective with the Marion County Sheriff's Department interviewed K.P. The child told the detective that her stepfather sexually abused her in her bedroom by rubbing her back and private areas. Child Protective Services ("CPS") received a referral of the accusations.

K.P. was interviewed multiple times in relation to these accusations. During those interviews, K.P. continued to make accusations of sexual abuse by her stepfather. K.P. explained that the stepfather came into her bedroom on July 1, 2013, around 10:00 a.m., and began rubbing her back, both over and under her shirt, her stomach, and her breasts. The stepfather then also began rubbing K.P.'s vaginal area over her clothes. He then asked if he could lick her breasts, to which K.P. responded "no." K.P. asked him to leave the bedroom, but he remained for approximately thirty minutes longer and continued the sexual contact. Based upon the accusations, the DHHR instituted the instant abuse and neglect proceedings and removed all four children who resided in the home with petitioner and the stepfather. Shortly thereafter, the DHHR filed an abuse and neglect petition against the stepfather and petitioner for failure to protect her child because she did not believe the disclosure. The DHHR placed K.P. with her biological father, per her request, and I.C. with her maternal aunt.

At the preliminary hearing in July of 2013, the circuit court found probable cause for the removal of the children. K.P. subsequently underwent two psychological evaluations. In October of 2013, the DHHR filed an amended abuse and neglect petition. In that amended petition, the DHHR alleged that petitioner physically, emotionally, and mentally abused K.P. by hitting her and graphically insulting her due to her food intake.

The circuit court held multiple adjudicatory hearings in this matter. Following days of testimony by fact and expert witnesses, the circuit court entered an order in August of 2014 that dismissed the action and returned the children to petitioner and the stepfather, with the exception of K.P., whom the parties agreed would continue to reside with her biological father. In that order, the circuit court found that the DHHR failed to meet its burden to prove the allegations in the petitions. The DHHR and guardian appealed the circuit court's dismissal order to this Court.

In May of 2015, by signed opinion following oral argument, this Court reversed the circuit court's dismissal order and remanded the matter with instructions that the circuit court enter an order adjudicating petitioner and the stepfather as abusing parents and K.P., I.C., G.C., and I.C. as abused children. *See In re: K.P., I.C., G.C., and I.C.*, 235 W.Va. 221, 772 S.E.2d 914 (2015). However, in that opinion, the Court specifically noted that

> only the issue of adjudication is before us in the appeal sub judice. Any post-adjudicatory requirements and the disposition will be matters for the circuit court to address on remand, and nothing in this opinion should be construed as directing the circuit court as to how it should rule on those issues.

*Id.*, 235 W.Va. at 234 n. 21, 772 S.E.2d at 927 n. 21.

On remand, the circuit court entered an adjudicatory order, which found that both petitioner and the stepfather abused the children. The matter was then scheduled for disposition. At the subsequent dispositional hearing, petitioner and the stepfather moved to voluntarily relinquish their parental rights to the children. The circuit court denied that motion. Relying, at least in part, on petitioner's and the stepfather's refusal to acknowledge any abuse or neglect in this matter, the circuit court found that there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected. As such, on August 6, 2015, the circuit court entered an order terminating the parental rights of petitioner and the stepfather to the children. Petitioner now appeals that termination order.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the DHHR violated her state and federal constitutional rights to due process of law when it removed I.C. from her home in July of 2013 because she offered to remove the stepfather from the home at that time. In support, petitioner points to case law discussing a parent's fundamental, constitutional right to parent a child. *See Troxel v. Granville*, 530 U.S. 57 (2000) (explaining that "we have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children."); Syl. Pt. 1, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973) (stating that "no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount . . . it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions."). Petitioner also relies upon West Virginia Code § 49-6-3(a),[3] which provides as follows:

---

[3] We note that petitioner cites the new version of Chapter 49 of the West Virginia Code made effective in May of 2015, after the time of the children's removal from her home in 2013. We cite the version of Chapter 49 in effect in 2013. However, the statutory language relied upon by petitioner is substantially similar.

3

Upon the filing of a petition, the court may order that the child alleged to be an abused or neglected child be delivered for not more than ten days into the custody of the state department or a responsible person found by the court to be a fit and proper person for the temporary care of the child pending a preliminary hearing, if it finds that: (1) There exists imminent danger to the physical wellbeing of the child; and (2) There are no reasonably available alternatives to removal of the child, including, but not limited to, the provision of medical, psychiatric, psychological or homemaking services in the child's present custody: *Provided, That where the alleged abusing person, if known, is a member of a household, the court shall not allow placement pursuant to this section of the child or children in said home unless the alleged abusing person is or has been precluded from visiting or residing in said home by judicial order.* In a case where there is more than one child in the home, or in the temporary care, custody or control of the alleged offending parent, the petition shall so state, and notwithstanding the fact that the allegations of abuse or neglect may pertain to less than all of such children, each child in the home for whom relief is sought shall be made a party to the proceeding. Even though the acts of abuse or neglect alleged in the petition were not directed against a specific child who is named in the petition, the court shall order the removal of such child, pending final disposition, if it finds that there exists imminent danger to the physical wellbeing of the child and a lack of reasonable available alternatives to removal.

(Emphasis added.)

At the outset, we note that petitioner fails to cite any authority in support of her contention that a due process violation occurs when a child is removed from a parent who is later adjudicated as abusive; has her parental rights involuntarily terminated; and fails to contest either the adjudication or termination. Further, the statutory provision in West Virginia Code § 49-6-3(a) relied on by petitioner is a prohibition to a child's placement in the home unless the alleged abusing person is removed; by the same token, it is not a mandate that a child must be placed in the home if the alleged abusing person is removed.

Moreover, petitioner's argument hinges on a factual assertion upon which this Court cannot rely. In her argument, petitioner claims that the stepfather was the sole alleged abusing person in the home. Therefore, according to petitioner, when she offered to have the stepfather leave the home to keep I.C., such action would have removed "the alleged abusing person" as contemplated in West Virginia Code § 49-6-3(a). We disagree.

Assuming petitioner offered to have the stepfather leave the home,[4] petitioner herself was an alleged abusing person at that time. In an exchange with petitioner's counsel during the adjudicatory phase of this case, a CPS worker explained that petitioner and the stepfather were both alleged abusing persons:

[4]Petitioner fails to indicate where in the record on appeal evidence supports her claim that she made that offer to the DHHR at the time of the children's removal.

4

Q [by petitioner's counsel on cross-examination]: . . . I don't quite understand why you didn't feel that it was appropriate with [K.P.] not being in the home for [petitioner] to have kept at least [I.C.]?

A [by the CPS worker]: When—in West Virginia, I mean, if there are allegations of abuse and neglect that determine that a child is unsafe in a home, then all children are deemed unsafe in that home.

Q: But if the alleged abuser was leaving?

A: There were t[w]o alleged abusers at this time. We would allegations [sic] against [petitioner] at the time we filed the ratification based upon the fact that she did not believe her child and was, therefore, failure to protect. So, at that time we had two maltreaters.

Therefore, petitioner's factual assertion must fail. In July of 2013 when the DHHR removed the children, petitioner's offer to have the stepfather leave the home would not have removed all alleged abusing persons from her home.

In this case, the statutory guidelines for the DHHR to intervene in the parent-child relationship were followed throughout. Petitioner's children were removed from her home following allegations of sexual misconduct in her home and her failure to protect a child therefrom. Pursuant to the statutory framework for the conduct of abuse and neglect proceedings in this State, the DHHR filed an abuse and neglect petition against petitioner and the stepfather that alleged improper conduct by both parties. The circuit court appointed petitioner counsel and held a preliminary hearing at which it made findings that the children's removal was permitted pending further proceedings, as provided in West Virginia Code § 49-6-3(a). Thereafter, following multiple, lengthy adjudicatory hearings, an appeal to this Court, and additional proceedings below, petitioner was adjudicated as an abusing parent, and her parental rights were involuntarily terminated. It is clear from the record before us that petitioner was provided with due process of law in the removal of her children. Therefore, given the circumstances presented herein, we find no merit to petitioner's assignment of error.

For the foregoing reasons, the circuit court's August 6, 2015, termination order is hereby affirmed.

Affirmed.

**ISSUED**: **April 12, 2016**

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II